# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| DOUGLAS B. SCHANE, <br>     Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of the <br> Social Security Administration, <br>     Defendant. | ) <br> ) <br> ) <br> )     CAUSE NO.: 2:12-CV-246-PRC <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Douglas B. Schane on July 29, 2012, and a Plaintiff's Brief in Support of Reversal of Commissioner's Final Decision [DE 17], filed on November 30, 2012. Mr. Schane requests that the February 9, 2011 decision of the Administrative Law Judge denying his claims for disability insurance benefits ("DIB") be reversed for an entry of an award of benefits or remanded for further proceedings. On February 5, 2013, the Commissioner filed a response, and Mr. Schane filed a reply on February 19, 2013. For the following reasons, the Court grants Mr. Schane's request for remand for further proceedings.

## PROCEDURAL BACKGROUND

On June 5, 2009, Mr. Schane filed an application for DIB, alleging an onset date of November 30, 2008. The application was denied initially on September 21, 2009, and upon reconsideration on December 29, 2009. Mr. Schane timely requested a hearing, which was held on January 26, 2011, before Administrative Law Judge ("ALJ") Roxanne J. Kelsey. In appearance were Mr. Schane, his attorney Thomas J. Scully III, vocational expert ("VE") Susan A. Entenberg, and Mr. Schane's wife Karen Schane. The ALJ issued a written decision denying benefits on February 9, 2011, making the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since November 30, 2008, the alleged onset date (20 CFR § 404.1571 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder, hepatitis C, obesity, porphyria cutanea tarda, back impairment, obesity and mild chronic obstructive pulmonary disease (20 CFR § 404.1520(c)). Knee impairment, left shoulder pain, and diverticulitis are not severe impairments within the meaning of the Social Security Act.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR § 404.1567(c). He cannot have concentrated exposure to fumes, gases, odors, or other respiratory irritants. He cannot be required to work outside for more than two hours in an 8-hour workday. He should not be required to drive as part of the job. He is limited to no more than occasional contact with supervisors, no collaborative contact with co-workers, and no required interaction with the public. The claimant cannot perform detailed or complex work.

6. The claimant is unable to perform any past relevant work (20 CFR § 404.1565).

7. The claimant was born [in 1963] and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

> national economy that the claimant can perform (20 CFR §§ 404.1569 and 404.1569(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2008, through the date of this decision (20 CFR 404.1520(g)).

(AR 12-20).

On May 2, 2012, the Appeals Council denied Mr. Schane's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On July 29, 2012, Mr. Schane filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Commissioenr's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

Mr. Schane suffers from various physical impairments including diverticulitis, COPD, lumbar degenerative disc disease, spinal stenosis, hepatitis C, and porphyria cutanea tarda. However, Mr. Schane's appeal concerns only his mental impairments. Because remand in this case turns on the ALJ's reliance on the Vocational Expert testimony in relation to the RFC, the Court provides a brief history of Mr. Schane's mental impairment for context.

Mr. Schane began treatment for bipolar mania in 1995 and continued to receive treatment at the time of the hearing. He began treating with psychiatrist Bhawani Prasad, M.D. in April 2008. He began treatment with psychiatrist M. Frampton, M.D. in May 2009, and continued to be treated by Dr. Frampton through the date of the hearing. Over that time period, he was treated with a

changing combination of medications for his mental and physical impairments that included Depakote, Wellbutrin, Lamictal, Lisopril, Vicodin, Flexeril, Valium, Thorazine, Haldol, Inferon, Ribavarin, Phenergan, Zyprexa, Klonopin, Geodon, Risperdal, and an inhaler to treat COPD. Mr. Schane testified that he suffers from insomnia and may go days without sleeping. His wife testified similarly.

In December 2008, Mr. Schane had been arrested and charged with resisting arrest and assault. He testified that he had been fired from more than 12 jobs essentially because he could not get along with others. Mr. Schane and his wife were separated because of his mental condition and the effect it had on their family.

On September 1, 2009, Gary M. Durak, Ph.D., P.C. performed a psychological evaluation of Mr. Schane. He gave a diagnosis of bipolar disorder and a GAF of 55.

On September 18, 2009, state agency consultant J. Gange, Ph.D. completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment. Dr. Gange found that Mr. Schane should be evaluated under Listing 12.04 for Affective Disorders, finding that Mr. Schane suffered from bipolar disorder. In evaluating whether Mr. Schane met the listing requirements, Dr. Gange opined that Mr. Schane had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. He further opined that the evidence did not establish the presence of the "C" criteria under Listing 12.04.

In the Mental RFC Assessment, Dr. Gange found Mr. Schane to be "not significantly limited" in most categories and found him "moderately limited" in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. Dr. Gange found

4

that there was no evidence of limitation in the ability to accept instructions and respond appropriately to criticism from supervisors or in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

On December 20, 2010, Dr. Frampton completed a Mental Impairment Questionnaire. Dr. Frampton opined that Mr. Schane was markedly limited in his ability to understand and remember short, simple instructions; maintain attention for two hour segments; maintain regular attendance and be punctual; work in co-ordination with others; accept instructions from supervisors; get along with co-workers without exhibiting behavioral extremes; respond to changes in the workplace; and deal with normal work stress. Dr. Frampton wrote that when Mr. Schane is in a pressure situation, he has difficulty remembering and will have disorganized thoughts. Dr. Frampton explained that Mr. Schane has episodes when he is easily overwhelmed and intimidated by coworkers. He would then isolate himself but "at other times it will trigger paranoia and verbal aggression at home." (AR 589). Dr. Frampton wrote that Mr. Schane is appropriate in public but he has limited public interaction unless accompanied by his wife. Mr. Schane isolates himself a great deal and is easily made to feel paranoid. Dr. Frampton explained that when Mr. Schane cycles into an episode of depression, his pain intensifies and he has increased difficulty in performing tasks. He wrote that Mr. Schane is overwhelmed by attempting basic tasks.

At the hearing, the ALJ posed several hypothetical questions to the Vocational Expert, two of which are the basis for remand in this case and are set forth in the analysis below.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

5

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

6

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not

disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Mr. Schane seeks reversal of the ALJ's decision for several reasons, arguing that reversal for an award of benefits is mandated by the vocational expert's testimony that corresponds with the RFC assigned by the ALJ, that the ALJ did not properly analyze whether Listing 12.04 was met or equaled, that the ALJ did not properly assess and weigh the medical evidence, that the ALJ did not

properly assess Plaintiff's credibility and that of the third party witnesses, and that the ALJ failed to properly assess Plaintiff's RFC.

The Court finds that, at face value, the testimony of Vocational Expert Susan A. Entenberg supports a finding of disability and an award of benefits based on the RFC assigned to Mr. Schane by the ALJ in her decision. However, the Court is unable to reconcile the restrictive nature of the nonexertional limitations in the RFC with much of the ALJ's discussion that found minimal limitations based on Mr. Schane's mental impairments. Thus, remand for further administrative proceedings for clarification of the RFC and the step five determination is required.

At the hearing, the ALJ posed two hypotheticals to Ms. Entenberg, both of which were based on an exertional limitation of medium work. Hypothetical number one provided:

> [T]he individual is able to perform a full range of medium work as defined by the regulations, but cannot be required to work outside for more than two hours in an eight hour work day. The individual should also not be required to drive as part of the job, **should have no more than occasional contact with supervisors, coworkers, and the public**, should not be required to perform complex or detailed work and should not have concentrated exposure to fumes, gasses, odors, or other respiratory irritants.

(AR 65-66) (emphasis added). Ms. Entenberg testified that this hypothetical person could not perform Mr. Schane's past work but could perform the jobs of stock clerk, dish washer, or janitor, with a total of 65,000 jobs in the metropolitan area.

The ALJ then posed the first version of hypothetical number two:

> [T]here will be the same limits involving change. The individual would have **no more than occasional, brief, and superficial contact with supervisors, coworkers, or the public**.

(AR 66) (emphasis added). For the next four pages of the hearing transcript, the ALJ and Ms. Entenberg discussed what the ALJ meant by "no more than occasional, brief, and superficial contact

9

with supervisors, coworkers, or the public." They discussed "tandem tasks;" Ms. Entenberg explained that she views "a tandem task as when you're working in coordination with other people on a particular item, a particular task, or I would see that to say it's collaborative." (AR 67). The ALJ then asked her how she would describe "less than occasional contact." The Court notes that portions of the hearing transcript in this section are labeled "[INAUDIBLE]." Ms. Entenberg explained that "occasional can be in the supervisor just stopping in at the eight[sic] hour or a couple of hours just to check in . . . and be sure that things are going fine and that, you know, there's not a problem or just making sure everything's okay . . . . Less than that is really not going to happen doing unskilled type work." (AR 68). As for contact with the public, Ms. Entenberg testified that the jobs do not require the worker to engage in public contact as in dealing with customers, answering questions, getting information, or getting items for them. Rather, the jobs would require the worker to be in contact with the public as the public goes in and out of the establishment. As for coworker contact, Ms. Entenberg testified that the worker would be in proximity with other people and would not be isolated but also would not have to work cooperatively.

> The ALJ then reformulated hypothetical number two "in a more elegant way":
>
> We're going to keep all of the elements we previously discussed in hypothetical number one. In terms of interaction with others, **the claimant would be required to have no more than occasional contact with supervisors, no collaborative contact with coworkers, and no required interaction with the public**.

(AR 70) (emphasis added). Ms. Entenberg responded, "I don't think jobs would remain." *Id*.

In her February 9, 2011 decision, the ALJ articulated Mr. Schane's RFC in heading 5 of the decision:

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR § 404.1567(c). He cannot have concentrated exposure to fumes, gases, odors, or other

respiratory irritants. He cannot be required to work outside for more than two hours in an 8-hour workday. He should not be required to drive as part of the job. **He is limited to no more than occasional contact with supervisors, no collaborative contact with co-workers, and no required interaction with the public.** The claimant cannot perform detailed or complex work.

(AR 15) (emphasis added).

Thus, based on Ms. Entenberg's testimony in response to revised hypothetical number two, no jobs are available for Mr. Schane's RFC and a finding of disability is required. Therefore, the Court reverses the ALJ's decision. However, because of the ALJ's conservative findings throughout the decision regarding the effect of Mr. Schane's psychiatric condition, the Court finds that, rather than making a direct award of benefits, remand for clarification of the ALJ's decision and potentially for further administrative proceedings is required.

First, at step three of the sequential analysis, in evaluating the "paragraph B" criteria (which the Court recognizes is not an RFC assessment), the ALJ found that Mr. Schane had mild restrictions in his activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation.

Next, in her RFC analysis, the ALJ found that the medical records do not document that Mr. Schane's doctor does not want him driving because of paranoia or road rage, the records document that Mr. Schane's memory is intact despite his allegations of short term memory loss, and that Mr. Schane was not compliant with medication. Curiously, the ALJ states that the "objective medical record is fully consistent with the above residual functional capacity and inconsistent with the claimant's purported limitations." (AR 17). Yet the ALJ goes on for a full paragraph to identify almost all "normal" findings. *Id*. The ALJ concludes that paragraph with the sentence, "There is nothing at present therefore to support the claimant's purported limitations." (AR 18). The ALJ

found that Mr. Schane participated fully and closely in the hearing without being distracted and that he was able to respond to questions in an appropriate manner.

In considering the opinion evidence, the ALJ gave significant weight to psychologist Dr. Gange's consultative opinion that Mr. Schane's ability to complete simple, repetitive tasks on a sustained basis is not severely restricted since it is consistent with the medical record. The ALJ gave *less weight* to Dr. Gange's opinion of "mild limitations in social functioning since it is contrary to the psychological consultative examination that showed few, if any, limitations except with getting along with others." (AR 18). The Court notes that Dr. Gange found that there was *no evidence* of limitation in the ability to accept instructions and respond appropriately to criticism from supervisors or in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; this seems to be in direct contradiction with the weight given to Dr. Gange's opinion and the RFC. Last, the ALJ "gave little weight to the treating doctor's opinion of marked limitations in functioning since his opinion is not supported by his own objective clinical findings at Exhibit 18." *Id.*

Finally, in finding Mr. Schane not disabled at step five, the ALJ relied on Ms. Entenberg's testimony in response to hypothetical number one, which only required that Mr. Schane have no more than occasional contact with supervisors, coworkers, and the public.

In light of the ALJ's findings and analysis, the Court cannot say with certainty that the ALJ intended to assign Mr. Schane the RFC in the decision limiting him to no more than occasional contact with supervisors, no collaborative contact with co-workers, and no required interaction with the public rather than an RFC requiring only no more than occasional contact with supervisors, coworkers, and the public.

If the ALJ did, in fact, intend to assign Mr. Schane this RFC, then the ALJ erred in relying on the Vocational Expert's testimony in response to hypothetical number one and, on remand, the ALJ is instructed to make a finding of disabled and award benefits based on the Vocational Expert's testimony in response to revised hypothetical number two.

However, if the ALJ did not intend to assign Mr. Schane this RFC but rather an RFC that required Mr. Schane to have only no more than occasional contact with supervisors, coworkers, and the public, then the ALJ is directed to conduct further proceedings, taking into account the following issues raised by Mr. Schane in the remaining sections of his brief on appeal:

1. At step three, in assessing the "part B criteria" of Listing 12.04, the ALJ shall (a) consider whether Mr. Schane's significant alterations in medication demonstrate episodes of decompensation, and (b) articulate in the decision whether the ALJ relies on the state agency physicians to support the finding of not disabled at step three;

2. In weighing the opinion of Mr. Schane's treating psychiatrist Dr. Frampton, the ALJ shall (a) specifically identify the objective findings that she thinks conflict with Dr. Frampton's assessment of marked functional impairments, (b) discuss the fact that Dr. Frampton is a psychiatrist, (c) clarify whether she is relying on the May 14, 2009 opinion of Dr. Bressack, a dermatologist, at Exhibit 5 or whether she was relying on the May 14, 2009 opinion of Dr. Frampton at Exhibit 6, (d) discuss the favorable evidence in the July 14, 2009 treatment note from Dr. Frampton, and (e) discuss the October 28, 2009 exam as having a mental status exam finding of "stable" rather than "normal" (as used by the ALJ in her decision), discuss the meaning of "stable" in that context, and discuss the favorable evidence in that treatment note; and

3. In assessing Mr. Schane's credibility, the ALJ shall (1) more thoroughly discuss the nature of and reasons for Mr. Schane's noncompliance with medication, including the fact that his psychiatric impairment could impact his ability to stay compliant, (2) consider the side effects of Mr. Schane's medications, (3) reconsider the "inconsistencies" identified in her decision, and (4) better explain the basis for not believing *Mrs*. Schane's testimony.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the request for remand and further administrative proceedings sought in Plaintiff's Brief in Support of Reversal of Commissioner's Final Decision [DE 17], and **REMANDS** the Commissioner of Social Security's final decision for further proceedings consistent with this Opinion and Order.

So ORDERED this 13th day of March, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record